**EDITTE  LERMAN, Esq. (**SB#241471)
280 North Oak Street
Ukiah, CA 95482
Tel: (707) 468-8300
Fax: (707) 937-2207

Attorney for Plaintiff
Donna Will

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
REDDING DIVISION

\* \* \* \* \* \*

| | |
|---|---|
| DONNA WILL, | ) CASE NO.:  2:20-cv-01529-KJM-DMC |
| | ) |
| | ) **PLAINTIFF'S MEMORANDUM** |
| Plaintiff, | ) **OF POINTS AND AUTHORITIES** |
| | ) **IN OPPOSITION TO MOTION FOR** |
| vs. | ) **SUMMARY JUDGMENT** |
| | ) |
| ERIC CLAY et al | ) |
| | ) Date:      March 31, 2023 |
| | ) Time:      10:00 a.m. |
| Defendants. | ) Courtroom: 3, 15th Floor |
| | ) Judge:     Hon. Kimberly J. Muller |

# TABLE OF CONTENTS

I.    INTRODUCTION                                                          ...1

II.   STATEMENT OF FACTS                                                    ...2

III.  SUMMARY JUDGMENT LEGAL STANDARDS                                      ...4

      A.    The Burden Of Proof                                             ...4

      B.    Undisputed Videos Are To Be Treated As Providing Undisputed Facts   ...5

IV.   ARGUMENTS IN OPPOSITION TO MOTION FOR SUMMARY
      JUDGMENT                                                              ... 6

            A.    Plaintiff's First Cause Of Action For Relief Against Chief Clay For
                  Excessive Force.                                          ...6

                  1.    The Quantum Of Force Used                          ...7

                  2.    Government Interests                                ...8

                        i.    Ms. Will Was Never A Threat                   ...8

                        ii.   The Severity Of The Crime At Issue            ...9

                        iii.  Whether Plaintiff Was Actively Resisting Arrest Or
                              Attempting To Evade Arrest                    ...10

                        iv.   Discussion                                    ...10

            B.    Clay Is Not Entitled To Qualified Immunity On Plaintiff's
                  irst Claim For Relief                                     ...11

            C.    Plaintiff's *Monell* Claim For Relief Against Defendant, Tehama
                  County District Attorney Bureau Of Investigation          ...13

                  1.  Specific theories of liability against supervisors    ...14

V.    CONCLUSION                                                            ...15

# TABLE OF AUTHORITIES

*CASES*

*Adickes vs. S.H. Kress & Co.*
    (1970) 398 U.S. 144 ...4

*Anderson vs. Liberty Lobby, Inc.*,
    (1986) 477 U.S. 242 ...4

*Associated Press vs. United States*
    (1945) 326 U.S. 1 ...4

*Bonivert v. City of Clarkston*
    (9th Cir. 2018) 883 F.3rd 865 ...6, 12

*Bryan v. MacPherson*
    (9th Cir. 2010) 630 F.3d 805 ...8

*Celotex Corp. vs. Catrett*,
    (1986) 477 U.S. 317 ...4

*City and Cnty. of S.F. v. Sheehan*
    (2015) 575 U.S. 600 ...11

*City of Canton v. Harris,*
    489 U.S. 378, 385 (1989) ...13, 14

*Corley vs. Life & Casualty Ins. Co.*,
    (1961) 296 F.2d 449 ...5

*Cortesluna v. Leon*
    (9th Cir. 2020) 979 F.3rd 645 ...12

*Deorle v. Rutherford*
    (2001) 272 F.3d 1272 ...8

*District of Columbia v. Wesby*
    (Jan. 22, 2018) 138 S.Ct. 577 ...12

*Eastman Kodak, Co. vs. Image Technical Servs.*
    (1992) 504 U.S. 451 ...4

*Espinosa v. City & County of San Francisco*
    (9th Cir 2011) 598 F.3d 528 ...7

*Felarca v. Birgeneau*
    (2018) 891 F.3rd 809                                                    ...11

*Franklin v. Foxworth,*
    31 F.3d 873, 876 (9th Cir. 1994)                                       ...8

*First Nat. Bank vs. Cities Service Co.,*
    (1968) 391 U.S. 253                                                     ...5

*Graham v. Connor*
    (1989) 490 U.S. 386                                                     ...8

*Hanks v. Rogers*
    (5th Cir. Tex. 2017) 853 F.3rd 738                                     ...12

*Hopkins v. Andaya,*
    958 F, 2d 881, 888 (9th Cir. 1992)                                     ...14

*In re Gregory S.*
    (1980) 112 Cal.App.3rd 764                                             ...6, 12

*In re Tony C.*
    (1978) 21 Cal.3rd 888                                                  ...6, 12

*Liberal v. Estrada*
    (9th Cir. 2011) 632 F.3rd 1064                                         ...12

*McClelland v. Facteau,*
    610 F.2d 693 (10th Cir. 1979)                                          ...14

*Miller v. Clark Cnty.,*
    340 F.3d 959 (9th Cir. 2003)                                           ...7

*Monell v. Department of Social Services,*
    436 U.S. 658 (1978)                                                    ...13

*Mullenix v. Luna*
    (2015) 577 U.S. 7                                                      ...11-12

*Murchison v. County of Tehama*
    (2021) 69 Cal. App. 5th 867                                            ...6-7

*Nehad v. Browder*
    (9th Cir 2019) 929 F.3d 1125                                           ...11

*People v. Lopez*
    (1986) 188 Cal.App.3d 592     ...10

*Poller vs. Columbia Broadcasting System, Inc.*
    (1962) 368 U.S. 464     ...4, 5

*Quadra vs. Superior Court of San Francisco,*
    (1974, ND Cal) 378 F. Supp. 605     ...4

*Recchia v. City of Los Angeles Department of Animal Services*
    (9th Cir. 2018) 889 F.3rd 553     ...5

*Santos v. Gates*
    (9th Cir. 2002) 287 F.3d 846     ...7

*Scott v. Harris*
    (2007) 550 U.S. 372     ...5

*Wood v. Ostrander*
    (9th Cir. 1989) 879 F.2d 583     ...6


*STATUTES AND ORDINANCES*

42 U.S.C. § 1983     ...15

Federal Rule of Civil Procedure 56     ...4

*Penal Code* § 148     ...1

*Tehama County Code* § 9.06.035     ...2

**NOTICE OF VOLUNTARY DISMISSAL**

In the interest of efficiency and economy Plaintiff hereby dismisses all causes of action against all defendants, <u>except</u> Eric Clay, County of Tehama, Tehama County District Attorney Bureau Of Investigation, and the Doe defendants, without prejudice.  Plaintiff also dismisses the following causes of action:

SECOND CAUSE OF ACTION for FALSE ARREST AND FALSE IMPRISONMENT under under 42 U.S.C. Sections 1983 and 1985;

THIRD CAUSE OF ACTION for FALSE ARREST AND IMPRISONMENT under California Civil Code §§ 52 and 52.1;

FOURTH CAUSE OF ACTION for CONSPIRACY PURSUANT TO 42 U.S.C. §§ 1983 and 1985; and

SIXTH CAUSE OF ACTION for *Monell* Claims for FAILING TO ADEQUATELY TRAIN AND SUPERVISE DEPUTY DISTRICT ATTORNEYS

**REMAINING CAUSES OF ACTION**

The Plaintiff will maintain the following causes of action alleged in the Complaint:

1)      FIRST CAUSE OF ACTION for excessive force against Chief Eric Clay

3)      FIFTH CAUSE OF ACTION for *Monell* claims against the County of Tehama, and the Tehama County District Attorney Bureau Of Investigation, for failing to adequately train and supervise Chief Eric Clay, on the use of excessive force and ratifying the use of excessive force.

**PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION**

This lawsuit arises out of Chief Eric Clay's retaliatory use of force against a fifty-five year old woman, Plaintiff, Donna Will, for questioning his authority to abate a cannabis garden at a location, which did not appear on the face of the warrant, which was served on her at the time of the incident.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Will v Clay et al, No., 20-cv-01529

Plaintiff's excessive force claim also arises from Clay's battery upon Plaintiff by allowing the muzzle of his assault rifle to uncontrollably hit her multiple times, endangering her life and safety.  The assault rifle could have accidentally discharged, causing serious injury or death.

## II.    STATEMENT OF FACTS

The Tehama County Code regulates the cultivation of marijuana in the COUNTY. *Tehama County Code* § 9.06.035(A) declares the outdoor cultivation of marijuana, in any amount or quantity, to be a public nuisance, which may be abated.

On September 5, 2017, Keith Curl, Kevin Hale, and Eric Clay, executed an Inspection and Abatement warrant at 22151 Riverside Ave, Red Bluff, for the abatement of a cannabis garden at that location. (Plaintiff's Separate Statement of Undisputed Facts (herein after "SS") 1, 28 and 29)

At the time Defendants executed the Inspection and Abatement warrant, Investigator Supervisor KEVIN HALE came into contact with Plaintiff, and was informed that the garden was at 22151 Riverside Ave, and that they were at the wrong location. (SS 32, 33, 35 and 86)

Investigator Supervisor Kevin Hale, while pointing the APN number on an abatement warrant for 16397 Stagecoach Road, Corning, replied "but it is all one parcel, and they actually have a parcel number on here, so that parcel number encompasses both addresses."  (SS 33, and 86)

Immediately thereafter, HALE presented the warrant he was pointing at and told Plaintiff, "this is your copy actually." (SS 86) Then HALE handed her the warrant, while stating, "I'm trying to give it to you." (SS 86) The warrant was for 16397 Stagecoach Road, Corning. (SS 86)

Afterwards, the officers moved into position to abate the garden. At that time Ms. Will stood in the way of a trailer that being backed up for the purposes of hauling away abated cannabis plants. (SS 42) She was asked to move and she refused. (SS 43) She was warned that she would be arrested if she did not move. (SS 44)  Ms. Will said she would move if an attorney told her to do so, CLAY informed Plaintiff that he is a police officer and he is telling her to get out of the way because she is interfering and warned Plaintiff that she would be

Page 2 of 13

taken to jail if she continued to interfere. (SS 45)  She finally moved, but she moved into the garden. (SS 47)  Ms. Will stood directly in front of a cannabis plant and continued to protest the abatement. (SS 48)

Immediately before the incident, Defendant, ERIC CLAY and Plaintiff engaged in the following exchange of words:

CLAY: At this point you are going to walk out of the garden.

WILL: No, I'm not.

CLAY: Yeah, because it's interfering with their ability to abate it.  Donna, I'm going to tell you one time - leave the garden or go to jail. It's as simple as that. -- I'm going to count to three.

WILL:  What are you going to charge me with?

CLAY: 148 Obstruction. One -

WILL:  Okay.  Can I talk to the lawyer?

CLAY:  two, three. You are under arrest.

Eric Clay seized Plaintiff's arm as he uttered the "You."

When CLAY uttered the word "arrest," he began the twisting movement of her arm. (SS 87)

Without uttering a single command, or order, to effectuate the arrest, and without any warning that he is going to use force, Clay intentionally used force against Plaintiff without cause. (SS 88)

As Clay grabbed Ms.Will's right arm and placed her in a reverse twist control hold, he lost control of his loaded and armed assault rifle, and struck Plaintiff numerous times with the muzzle of his automatic assault rifle. (SS 89)

Clay's, intentional and reckless actions endangered Ms. Will's life, as his uncontrolled loaded assault rifle may have discharged, injuring or killing Plaintiff. (SS 90)

Clay's violent actions physically injured Ms. Will.  (SS 92) Ms. Will was transported

Page 3 of 15

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Will v Clay et al, No., 20-cv-01529

to the hospital emergency room to treat the wounds Clay inflicted on her. (SS 92)

Clay knew that he was not authorized to use the force he used on Ms. Will.  Under the Tehama County District Attorney Bureau of Investigations Policy 300, section 300.3, Curl was authorized to "use only that amount of force that reasonably appears necessary given the facts and circumstances perceived by the investigator at the time of the event to accomplish a legitimate law enforcement purpose." (SS 93)

After the violent incident, Clay told Ms. Will that she needs to put her hands behind her back. Ms. Will complied, and was cuffed without any further incident. (SS 91) This fact demonstrates that his use of force was not reasonably necessary.

### III.    SUMMARY JUDGMENT LEGAL STANDARDS

Federal Rule of Civil Procedure 56(c) provides for the entry of summary judgment only where the pleadings, depositions, and declarations on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Many courts have stated that summary judgment is a severe, extreme or drastic remedy that should be applied cautiously - that summary judgment is not to be used as a substitute for the trial of disputed issues of fact, *Associated Press vs. United States* (1945) 326 U.S. 1) or so as to require that the parties litigate by way of affidavits. *Poller vs. Columbia Broadcasting System, Inc.* (1962) 368 U.S. 464.

#### A.    The Burden Of Proof

The burden is on the party moving for summary judgment to show that no genuine issue of fact exists *(Anderson vs. Liberty Lobby, Inc.*,(1986) 477 U.S. 242) and that the moving party is entitled to judgment as a matter of law. *Quadra vs. Superior Court of San Francisco*, (1974, ND Cal) 378 F. Supp. 605.  This being the case, the trial court should not grant a summary judgment motion unless convinced that there is no evidence to sustain judgment in favor of the nonmoving party under any circumstances.

The nonmoving party must designate specific facts showing that there is a genuine issue for trial (*Celotex Corp. vs. Catrett*, (1986) 477 U.S. 317) or must, in other words produce

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Will v Clay et al, No., 20-cv-01529

affirmative evidence that would support a jury verdict in its favor. (*Anderson vs. Liberty Lobby, Inc.*, (1986) 477 U.S. 242)  The respondent in a summary judgment must present sufficient evidence as to the existence of the disputed fact to permit the trier of fact to reasonably find in the nonmoving party's favor as to that fact or at least provide the court with some indication that the quantum of evidence necessary to reach the jury with their claim can be produced at trial.

The Supreme Court has stated that a court considering a summary judgment motion must look at the record in the light most favorable to the party opposing the motion, and that summary judgment is appropriate only where it is quite clear what the truth is. (*Poller*, supra.) The issue of material fact which must be present to entitle the plaintiff herein to proceed to trial does not have to be resolved conclusively in the nonmoving party's favor, rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury to resolve the parties' differing versions of the truth at trial. (*First Nat. Bank vs. Cities Service Co.*, (1968) 391 U.S. 253.)  The requirement that there be no genuine dispute as to any material fact is to be strictly construed so as to insure that factual issues will not be determined without the benefit of the truth-seeking procedures of trial.  (*Corley vs. Life & Casualty Ins. Co.*, (1961) 296 F.2d 449.)

The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in such party's favor. *Eastman Kodak, Co. vs. Image Technical Servs.* (1992) 504 U.S. 451.)  The materials submitted on a motion for summary judgment should be viewed in a light most favorable to the party opposing the motion, and that party should be given the benefit of all inferences reasonably deducible from the evidence. (*Adickes vs. S.H. Kress & Co.* (1970) 398 U.S. 144.)

### B.   Undisputed Videos Are To Be Treated As Providing Undisputed Facts

A videotape of undisputed validity should be treated as providing undisputed facts under a summary judgment motion. (*Scott v. Harris* (2007) 550 U.S. 372, 380-381; *Recchia v. City of Los Angeles Department of Animal Services* (9th Cir. 2018) 889 F.3rd 553, 556, fn. 1.)

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Will v Clay et al, No., 20-cv-01529

## IV.   ARGUMENTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

To succeed on her section 1983 claim, Plaintiff must make a showing that (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived Plaintiff of a federal constitutional or statutory right. *Wood v. Ostrander* (9th Cir. 1989) 879 F.2d 583, 587.

### A.   Plaintiff's First Cause Of Action For Relief Against Chief Clay For Excessive Force.

A peace officer may use that amount of force that is *reasonably necessary* under the circumstances in order to enforce a lawful detention. (*In re Tony C.* (1978) 21 Cal.3rd 888, 895; *In re Gregory S.* (1980) 112 Cal.App.3rd 764, 778.

However, the use of *excessive force* constitutes a Fourth Amendment violation. (*Bonivert v. City of Clarkston* (9th Cir. 2018) 883 F.3rd 865, 879.)

In *Murchison v. County of Tehama* (2021) 69 Cal. App. 5th 867 (*Murchison*) Tehama County Sheriff, Sgt. Knox, was sued for the use of excessive force during a warrantless entry into a private citizen's curtilage.  Plaintiff will first look to *Murchison* in her analysis of her excessive force claim.

> Claims that police officers used excessive force in the course of an arrest, investigatory stop or other "seizure" of a free citizen are analyzed under the reasonableness standard of the Fourth Amendment to the United States Constitution; police officers may use force to the extent that it is objectively reasonable under the circumstances. (*Graham v. Connor* (1989) 490 U.S. 386, 395, 397 (Graham).) Determining whether an officer's actions are objectively reasonable requires balancing ""'the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against the countervailing governmental interests at stake." (*Id*. at p. 396; see also *Deorle v. Rutherford* (9th Cir. 2001) 272 F.3d 1272, 1284–1285 ["Less than deadly force, like deadly force, may not be used without sufficient reason; rather, it is subject to the Graham balancing test"].) In other words, "'[t]he force which [i]s applied must be balanced against the need for that force.'" (*Deorle*, at p. 1279.) "[I]t is the need for force which is at the heart of the Graham factors." (*Liston v. County of Riverside* (1997) 120 F.3d 965, 976.)

Page 6 of 15

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather with the 20/20 vision of hindsight." (*Graham, supra*, 490 U.S. at p. 396.) "'The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving— about the amount of force that is necessary in a particular situation.'" (*Glenn v. Washington County* (9th Cir. 2011) 673 F.3d 864, 871.)

(*Murchison v. County of Tehama* (2021) 69 Cal. App. 5th 867, 887-888)

The excessive force analysis involves three steps. First, we must assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating 'the type and amount of force inflicted.'" *Espinosa v. City & County of San Francisco* (9th Cir 2011) 598 F.3d 528, 537 (quoting *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003)). "[E]ven where some force is justified, the amount actually used may be excessive." *Santos v. Gates* (9th Cir. 2002) 287 F.3d 846, 853. Second, we evaluate the government's interest in the use of force. *Graham v. Connor* (1989) 490 U.S. 386, 396. Finally, "we balance the gravity of the intrusion on the individual against the government's need for that intrusion." *Miller*, 340 F.3d at 964.

## 1.      The Quantum Of Force Used

First we consider the quantum of force used when Clay grabbed and twisted an elderly woman's arm in a reverse twist lock hold, subduing her, and bringing her to the ground. While at first glance, such force may be considered minor, it is well known that such force against an elderly person may result in serious harm.  Elderly persons are universally known to be fragile, their bones are brittle, and they heal slowly.

Moreover, such use of force was unnecessary. Clay should have simply ordered Ms. Will to submit to the arrest, to put her hands behind her back, so that he could cuff her.  Instead Clay decided to use force from the outset.  Then after the incident, he ordered Ms. Will to place her hands behind her back. Ms. Will submitted, and was cuffed.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Will v Clay et al, No., 20-cv-01529

## 2. Government Interests

The strength of the government's interest in the force used is evaluated by examining three primary factors: (1) "whether the suspect poses an immediate threat to the safety of the officers or others," (2) "the severity of the crime at issue," and (3) "whether [she] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. These factors, however, are not exclusive. *See Bryan v. MacPherson* (9th Cir. 2010) 630 F.3d 805, 826. We "examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*.'" *Id.* (quoting *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)). Other relevant factors include the availability of less intrusive alternatives to the force employed, whether proper warnings were given and whether it should have been apparent to officers that the person they used force against was emotionally disturbed. *See, e.g., Bryan*, 630 F.3d at 831; *Deorle v. Rutherford* (2001) 272 F.3d 1272, 1282-83.

The "most important" factor is whether the individual posed an "immediate threat to the safety of the officers or others." *See, e.g., Bryan*, 630 F.3d at 826 (internal quotation marks omitted).

### i. Ms. Will Was Never A Threat

Here, Donna Will was not an immediate threat to any of the governmental actors during the arrest. There is nothing within the body cam videos which may indicate that Ms. Will could have been perceived to be a threat at all. Simply put, she was an elderly woman standing in the way of a trailer that being backed up for the purposes of hauling away abated cannabis plants. (SS 42) She was asked to move and she refused. (SS 43) She was warned that she would be arrested if she did not move. (SS 44) Ms. Will said she would move if an attorney told her to do so, CLAY informed Plaintiff that he is a police officer and he is telling her to get out of the way because she is interfering and warned Plaintiff that she would be taken to jail if she continued to interfere. (SS 45) She finally moved, but she moved into the garden. (SS 47) Ms. Will stood directly in front of a cannabis plant and continued to protest the abatement. (SS 48)

The body-cam evidence of the incident, speaks for itself. There it can be seen that Clay told Ms. Will: "At this point in time, Donna, you're going to walk out of the garden." (SS 50)

Ms. Will responded: "No, I'm not." (SS 51)

Clay told Ms. Will, "I'm going to tell you one time. Leave the garden or go to jail. It's as simple as that." (SS 54) He then told her he would count to three, to which Plaintiff asked, "what are you going to charge me with?" (SS 54)

Clay told Ms. Will, "148, obstruction." (SS 55)

Then Clay began counting , "One -"

Ms. Will interrupted the count, "can I talk to the lawyer?"

Then Clay finished, "two, three" (SS 57)

Clay began to tell Ms. Will, "You are under arrest." (SS 87)

As Clay was saying "You" he grabbed Ms. Will's arm.  (SS 87)

When CLAY uttered the word "arrest," he began the twisting movement of her arm. (SS 87)   He continued to twist her arm in a reverse direction until she hit the ground. (SS 60, 61, and 89)

Therefore the use of force began before Ms. Will was placed under arrest, and escalated as she was informed that she was under arrest.

 As Clay was twisting Ms. Will's arm, and taking her to the ground, Clay allowed the muzzle of this assault rife to uncontrollably impact Ms. Will's body numerous times. (SS 89) Each of these impacts recklessly endangered Ms. Will's life, as the firearm could have accidently discharged due to the impact. (SS 90)

Under the forgoing set of facts it is clear that Ms. Will was not an immediate threat to any of the officers.  Moreover, it is also clear that Ms. Will was not under arrest before the violent incident began.  Therefore she could not have been resisting arrest before the use of force was deployed.

### ii.    The Severity Of The Crime At Issue

At the time of the incident the government actors were serving an inspection and abatement warrant (no crime here).  Ms. Will clearly made an attempt to stop the abatement. She

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Will v Clay et al, No., 20-cv-01529

wanted to talk to a lawyer first, before moving out to the officer's way. However, there was no probable cause to believe that she was obstructing an officer's duty in violation of *Penal Code* § 148, the alleged crime at issue.

Pursuant to *Cal Penal Co*de § 148 (a) (1) it is unlawful for any person to willfully resist, delays or obstruct any public officer, peace officer ... in the discharge or attempt to discharge any duty of his or her office or employment. The person's knowledge is required. *People v. Lopez* (1986) 188 Cal.App.3d 592, 599–600.

Since a suspect's knowledge that an officer is engage in a lawful duty is required for probable cause to arrest that suspect for a violation of *Penal Code* § 148, Plaintiff's seizure/arrest was without probable cause. The Defendants presented an inspection/abatement warrant, which obviously did not apply to the property they were inspecting. It was for a property in a different city. The warrant was for a property in the City of Corning, California. The property where they were serving the warrant was located in the City of Red Bluff, California. The Defendants were informed by Plaintiff that the warrant was not for the property they were seeking to inspect and abate. The Defendants, in turn, asserted that the APN number on the warrant covered the Red Bluff property, which of course is an impossibility. Therefore, there was no basis for the "knowledge" element of *Penal Code* § 148. Since there was no probable cause that Plaintiff was violating *Penal Code* § 148 at the time of the incident, there was no crime at issue during Clay's use of force.

### iii.   Whether Plaintiff Was Actively Resisting Arrest Or Attempting To Evade Arrest

At the time of the incident Ms. Will was not told that she was under arrest. She was told that if she did not move by the time Clay counted to three, she would be arrested. CLAY then counted, "one, -  two, three." CLAY then grabbed Ms. Will's arm, began twisting it, when he told her "you are under arrest." CLAY's violence began before the arrest. Moreover, he did not issue any commands to Ms. Will, ordering her to submit to an arrest.

### iv.   Discussion

In the instant case, "[The] officers themselves may [have]'unnecessarily creat[e] [their]

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Will v Clay et al, No., 20-cv-01529

own sense of urgency.' [Citations.] … Reasonable triers of fact can, taking the totality of the circumstances into account, [may] conclude that an officer's poor judgment or lack of preparedness caused him or her to act unreasonably, 'with undue haste.'" (*Nehad v. Browder* (9th Cir 2019) 929 F.3d 1125, 1135.)  There clearly was no "urgency" which necessitated the any use of force at all.

In fact under the Tehama County District Attorney Bureau of Investigations - Policy 300, on the Use of Force, prohibited Clay's use of force in this case.

Under section 300.3 of Policy 300, "Investigators shall use only that amount of force that reasonably appears necessary given the facts and circumstances ..."

Under section 300.3 of Policy 300.3.1, "Any peace officer may use reasonable force to effect and arrest, to prevent escape of to overcome resistance."

Here, Clay did not order Ms. Will to submit to an arrest.  He did not ask, or order, her to put her hands behind her back, etc.  Ms. Will was not a flight risk, and she did not resist arrest in any way.  Instead Clay escalated the situation to violence, without cause.  In his haste Clay immediately resorted to the use of force against an elderly woman who questioned his authority to abate her cannabis plants.

For the forgoing reasons, there are sufficient facts to support a claim that Clay violated Ms. Will's right to be free from excessive force.

### B.      Clay Is Not Entitled To Qualified Immunity On Plaintiff's First Claim For Relief

"Qualified immunity protects public officials from a court action unless their conduct violated a constitutional right that was clearly established at the time." (*Felarca v. Birgeneau* (2018) 891 F.3rd 809, 815; citing *City and Cnty. of S.F. v. Sheehan* (2015) 575 U.S. 600, 611).

"The doctrine of qualified immunity shields officials from civil liability so long as
their conduct does not violate clearly established statutory or constitutional
rights of which a reasonable person would have known. (Citation) A clearly established
right is one that is sufficiently clear that every reasonable official would have
understood that what he is doing violates that right. (Citation). We do not require
a case directly on point, but existing precedent must have placed the statutory or
constitutional question beyond debate. Put simply, qualified immunity protects all

Page 11 of 15

but the plainly incompetent or those who knowingly violate the law. (Citation) We have repeatedly told courts . . . not to define clearly established law at a high level of generality. (Citation) The dispositive question is whether the violative nature of particular conduct is clearly established. (Citation) This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. (Citation) Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. (Citation)"

(Internal quotations and citations deleted; *Mullenix v. Luna* (2015) 577 U.S. 7, 12)

However, "(a)n exception exists for 'the rare "obvious case," where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." (*Cortesluna v. Leon* (9th Cir. 2020) 979 F.3rd 645, 652, fn. 4; quoting *District of Columbia v. Wesby* (Jan. 22, 2018) 138 S.Ct. 577.)

A peace officer may use that amount of force that is *reasonably necessary* under the circumstances in order to enforce a lawful detention. (*In re Tony C.* (1978) 21 Cal.3rd 888, 895; *In re Gregory S.* (1980) 112 Cal.App.3rd 764, 778.

However, the use of *excessive force* constitutes a Fourth Amendment violation. (*Bonivert v. City of Clarkston* (9th Cir. 2018) 883 F.3rd 865, 879.)

The force used in effecting a detention or an arrest must be tailored to the circumstances. It must be reasonable under the circumstances. Yanking a person out of his vehicle, pushing him up against his car, and handcuffing him when that person is not attempting to escape nor resisting the officers in anyway other than being "verbally confrontational," may be excessive. (*Liberal v. Estrada* (9th Cir. 2011) 632 F.3rd 1064, 1078-1079.)

An officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, and who engages in, at most, passive (i.e., verbal) resistance, and whom the officer stopped for a minor traffic violation. (*Hanks v. Rogers* (5th Cir. Tex. 2017) 853 F.3rd 738:

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Will v Clay et al, No., 20-cv-01529

In the instant case, the Plaintiff verbally protested that the officers were at the wrong location, that the warrant was not for the address they were seeking to abate. When that did not work Ms. Will tried to block the abatement by standing in the way.

Chief Clay told Ms. Will that if she would not move out of the way she would go to jail, and that he would arrest her when he counted to three.

As Clay was counting, Ms. Will asked if she could call a lawyer to clear things up.

Clay finished his count, and immediately resorted to the use of force, a reverse arm twist, on an elderly woman, without any warning, bringing Ms. Will to the ground.

Officer Clay abruptly resorted to overwhelming physical force, which brought Ms. Will to the ground, rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, and who engages in, at most, passive (i.e., verbal) resistance, and whom did not even commit a crime.  Even worse, when Clay brought Ms. Will to the ground, he battered her with the muzzle of his assault rifle.  The rifle could have discharged at the time, seriously injuring, or killing Ms. Will.

All Chief Clay had to do was simply ask Ms. Will to submit to the arrest.  He did not.

Clay claims that Ms. Will was obstructing the duty of an officer in violation of *Penal Code* § 148, however he presented a warrant for a property in another city.  No crime being committed here, which could justify such violence.

### C.    Plaintiff's *Monell* Claim For Relief Against Defendant, Tehama County District Attorney Bureau Of Investigation

Public entities are not vicariously liable for the actions of their employees under § 1983. (*Monell v. Department of Social Services,* 436 U.S. 658, 691-94 (1978); see also *City of Canton v. Harris,* 489 U.S. 378, 385 (1989)). Municipal liability arises only when the plaintiff shows: (1) deprivation of a constitutional right; (2) the municipality has a policy; (3) the policy amounts to deliberate indifference to plaintiffs constitutional rights; and (4) the policy is the moving force behind the constitutional violation. (*City of Canton,* 489 U.S. at 389)

In *City of Canton v. Harris*, the Supreme Court ruled that a municipality may be held liable in certain circumstances for constitutional violations caused by its failure to train

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Will v Clay et al, No., 20-cv-01529

employees.  Inadequacy of training may serve as a basis for Section 1983 liability where the failure to train amounts to "deliberate indifference" to the constitutional rights of persons with whom the police may come into contact.  *Monell* - The court held that liability may be imposed where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton* at p. 390.  The Court further held that under these circumstances, "the failure to provide proper training may fairly be said to represent a policy for which the city is responsible." *Id* at p. 390.

Thus *City of Canton* provides plaintiffs with two different approaches to a failure to train case. First a plaintiff may establish deliberate indifference by demonstrating a failure to train officers in a specific area where there is an obvious need for training to avoid violations of citizens' constitutional rights.  Second, plaintiff may rely on a pattern of unconstitutional conduct so pervasive as to imply actual or constructive knowledge on the part of policymakers, whose deliberate indifference, evidenced by a failure to correct once the need for training became obvious, would be attributable to the municipality.

## 1. Specific theories of liability against supervisors

The clearest cases of liability are where the supervisors are present at the scene or direct, encourage or acquiesce in the unlawful activities.  Failure to adequately train subordinate officers in necessary skills has been held to be a sufficient basis for liability.  *Hopkins v. Andaya*, 958 F, 2d 881, 888 (9th Cir. 1992) summary judgment for chief inappropriate where he "put an officer on the street who is so badly trained and instructed he lets his baton be taken away from him and then has to kill an unarmed civilian to save his own life."  A jury issue would be raised if the plaintiff offers evidence of defective training affirmatively linked to the underlying incident.  See *McClelland v. Facteau,* 610 F.2d 693 (10th Cir. 1979).

Here, the supervisor himself, Chief Clay, was the offender during the underlying incident. His acts ratified the unconstitutional policy to execute summary violence upon a suspect during

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Will v Clay et al, No., 20-cv-01529

an arrest, without issuing any commands to submit to the arrest, and without cause.

### V.    CONCLUSION

The video recordings alone provide sufficient evidence to establish triable claim for excessive force under 42 U.S.C. § 1983:

Since Chief Clay is a supervisor, committing the act, there is also sufficient evidence for municipal liability against the County of Tehama and the Tehama County District Attorney Bureau Of Investigation.

Therefore Defendants' motion for summary judgment on Plaintiff's FIRST CAUSE OF ACTION for excessive force against Chief Eric Clay and FIFTH CAUSE OF ACTION for *Monell* claims against the County of Tehama, and the Tehama County District Attorney Bureau Of Investigation, must be denied.

Respectfully submitted,

Dated:  March 14, 2023


------------------/s/------------------

Editte Lerman
Attorney for Plaintiff
**Donna Will**

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Will v Clay et al, No., 20-cv-01529

**DECLARATION OF SERVICE**

I, Editte D. Lerman, declare as follows:
I am a resident of the State of California, residing or employed in Mendocino, California. I am over the age of 18 years and am not a party to the above-entitled action. My business address is 280 North Oak Street, Ukiah, CA 95482.

On March 14, 2023,

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Was served by electronic service via the Court's ECF filing system upon the following parties:

*Attorneys for Defendants*
PORTER SCOTT
A PROFESSIONAL CORPORATION
David R. Norton
350 University Avenue, Suite 200
Sacramento, California 95825

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed this 14th day of March, 2023, at Mendocino County, California.

---------/s/Editte Lerman