UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Donna Marie Will, | No. 2:20-cv-01529-KJM-AC |
| Plaintiff, | ORDER |
| v. | |
| Eric Clay, et al., | |
| Defendants. | |

Plaintiff Donna Will brings this section 1983 action alleging violation of her Constitutional rights.  Defendants move for summary judgment.  For the reasons below, the court **grants the motion**.

I.   BACKGROUND

The following facts are undisputed and supported by the record.  On August 23, 2017, an administrative hearing officer ordered the owners or occupants of 22149 Riverside Ave., Red Bluff, California, Assessor's Parcel Number (APN) 035-240-030, to abate the unlawful marijuana cultivation taking place on the premises.  Pl.'s Resp. to Defs.' Statement of Undisputed Facts (SUF) ¶ 17, ECF No. 33-2; Admin. Hr'g Decision, Defs.' Ex. R, Attach. 1, ECF No. 30-4.  The same APN also applies to the property at 22151 Riverside Ave.[1]  SUF ¶¶ 1–2; Curl Decl. ¶ 3,

---

[1] The court refers to the properties at 22149 Riverside Ave. and 22151 Riverside Ave. collectively as the "Riverside properties."

Defs.' Ex. D.  On September 5, 2017, after determining the owners of the marijuana cultivation had not abated it, the Tehama County Superior Court issued an abatement warrant permitting the county to enter the property located at 22149 Riverside Ave.  SUF ¶ 26; Riverside Warrant, Defs.' Ex. S.  Peace officers, including Officers Hale and Clay, arrived at the Riverside property to execute the warrant.  SUF ¶ 29; Clay Decl. ¶ 3, Defs.' Ex. C.  Plaintiff and the owner of the property were present.  SUF ¶¶ 3, 30; *see* Warrant Appl. ¶ 13, Defs.' Ex. R.

Officers presented plaintiff with a copy of a warrant for a different property, located at 16397 Stagecoach Rd., Corning, California, APN 062-240-035 (Stagecoach property).  Hale Body Cam. One at 5:45–5:47; Hale Body Cam. Two at 00:44–00:54;[2] Stagecoach Warrant, Lerman Decl. Ex. 1, ECF No. 33-1.  Plaintiff and the owner informed Officer Hale the warrant was for the wrong property.  Hale Body Cam. One at 5:19–5:50.  Officer Hale told plaintiff "you guys are saying there's a separate address, but it's all one parcel" and explained the APN on the warrant "encompasses both addresses."  Hale Body Cam. Two at 0:38–0:50.  However, Officer Hale presented the warrant for the Stagecoach property, apparently inadvertently, and not the warrant that had been issued for the Riverside properties.  *See id.* at 0:50–0:53.  Plaintiff told Officer Hale she was aware of an order and would allow the officers to take the marijuana plants if they came back with a federal warrant.  SUF ¶ 34; Hale Body Cam. Two at 00:59–1:30.  Plaintiff continued to inform officers they needed a federal warrant and the officers were violating federal law because they were on church property and their church is federally recognized.  SUF ¶¶ 35–36; Hale Body Cam. Two at 2:28–2:32; Clay Body Cam. One at 8:15–12:55.  Plaintiff identifies as a member of the Oklevueha Native American Church, SUF ¶ 4; she told officers the marijuana plants were "sacred packages" that belonged to the church, *id.* ¶¶ 36–37; Clay Body Cam. One at 8:48–8:52.

After a member of the law enforcement team cut a fence to gain access to the marijuana cultivation area, Clay Body Cam. One at 11:20–13:57, someone driving "a trailer attempted to back into the marijuana garden in order to abate the nuisance," SUF ¶ 41; Clay Body Cam. One at

---

[2] Defendants lodged the body camera footage with the court in USB format.  *See* Notice of Lodging, ECF No. 31; Acknowledgment of Receipt, ECF No. 32.

14:34–14:45.  Plaintiff, who was 55 years old at the time of the incident, stood in front of the garden and blocked the trailer.  Clay Body Cam. One  at 14:36–15:00; *see* Opp'n at 1, ECF No. 33.  Plaintiff told defendants, "I don't want to make it easy for you," and continued to verbally protest.  Clay Body Cam. One at 14:40–14:45.  Officer Clay informed plaintiff she needed to move and could risk going to jail if she continued to interfere with the execution of the warrant.  *See id.* at 14:44–14:50.  Plaintiff again verbally protested and asked to speak with an attorney first.  Clay Body Cam. Two at 00:00–00:30.  Officer Clay informed her an attorney had no say in this matter because a "judge is higher than an attorney" — a judge had issued the warrant — and warned her to stop interfering and to move or go to jail.  *Id.*  Plaintiff then moved into the marijuana garden and continued to verbally protest.  *See id.* at 00:27–1:28.  Officers warned her they would arrest and charge her with obstruction if she did not leave the garden.  *See id.*  Plaintiff refused to leave, so Officer Clay counted to three and then informed plaintiff she was under arrest.  *Id.* at 1:21–1:31.

    At the same time, Officer Clay grabbed plaintiff's arm and began placing her in a reverse twist control hold.  *Id.* at 1:30–1:33; Hale Body Cam. Two at 10:15–10:17.  As Officer Clay twisted her arm, plaintiff exclaimed, "Ow, you're hurting me, ow!"  Clay Body Can. Two at 1:32–1:34.  Plaintiff fell to the ground and continued to tell officers she was hurt.  *Id.* at 1:34–1:59.  Officer Clay released his hold and grabbed her other arm.  Hale Body Cam. Two at 10:21–10:24.  Officer Clay's firearm, which hung loosely across the front of his body from a strap, came into contact with plaintiff and "banged against [her] body" several times as he arrested her.  Defs.' Reply to Pl.'s Statement of Disputed Facts (SDF) ¶ 89, ECF No. 34-2; Clay Body Cam. Two at 1:32–1:38; Hale Body Cam. Two at 10:16–10:26.  While plaintiff was on the ground, Officer Clay ordered plaintiff to unclench her fist because he felt threatened, and she promptly unclenched her fist.  Clay Body Cam. Two at 1:50–1:52.  Plaintiff lay on the ground for approximately 50 seconds.  Hale Body Cam. Two at 10:23–11:20.  After plaintiff got up, officers placed her in a handcuff.  *Id.* at 11:50.  Plaintiff told the officers she wanted to go to the hospital because her arm was hurting.  *Id.* at 11:51–11:59.

Plaintiff was later transported to a hospital, diagnosed with high blood pressure and received pain medication. Will Dep. 108:17–111:11, Defs.' Ex. H; Clay Decl. ¶ 7; SUF ¶¶ 70–71. Plaintiff testified she was "in extreme pain." Will Dep. 108:18. She was charged with violating California Penal Code § 148 (obstruction of justice), SUF ¶ 72, but she alleges this count was dismissed, *Id.* ¶ 74. Plaintiff later pled to a violation of California Penal Code § 415 (disturbing the peace). *Id.* ¶ 75; Pl.'s Am. Resp. to Defs.' Interrog. at 13, Defs.' Ex. P.

In this case, plaintiff sues Officer Clay, Officer Hale, the County of Tehama and agencies within the County. Compl., ECF No. 1. Defendants move for summary judgment on all the claims. Mot., ECF No. 30-1. Plaintiff filed a late opposition and notified the court she voluntarily dismisses four of her claims and her claims against Officer Hale. Opp'n at 1; *see* E.D. Cal. L.R. 230(c) (requiring opposition to be filed "no later than fourteen (14) days after the motion was filed."). At hearing, the court confirmed defendants would not be prejudiced if the court considered the late filing. Regarding the notice of dismissal, plaintiff filed it after defendant moved for summary judgment and did not file a stipulation dismissing the claims in accordance with Federal Rule of Civil Procedure 41(a)(1). At hearing, the parties did not object to the court's construing plaintiff's notice as a request to dismiss the four claims under Federal Rule of Civil Procedure 41(a)(2), as it does here, dismissing the claims with prejudice. *See Terrovona v. Kincheloe*, 852 F.2d 424, 429 (9th Cir. 1988) ("[T]he court can grant a dismissal at its discretion.").

The remaining two claims include: 1) excessive force against Officer Clay and 2) *Monell* liability against the County of Tehama and Tehama County District Attorney Bureau of Investigation. Opp'n at 1.

## II.   LEGAL STANDARD

A court may grant summary judgment if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment must first show no material fact is in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The non-moving party must then "establish that there is a genuine issue of material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

585 (1986). The court views the record in the light most favorable to the non-moving party and draws reasonable inferences in that party's favor. *Id.* at 587–88.

### III. ANALYSIS

#### A. Excessive Force

Defendant Clay argues his use of force was not excessive as a matter of law because "[o]fficers are permitted to use some amount of force to effectuate an arrest" and defendant used "*de minimis* force." Mot. at 15 (citing Cal. Penal Code § 835a). The Fourth Amendment protects against excessive force by "law enforcement officers . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen . . . ." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "All claims of excessive force . . . are analyzed under the objective reasonableness standard." *Blanford v. Sacramento County*, 406 F.3d 1110, 1115 (9th Cir. 2005). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene . . . ." *Graham*, 490 U.S. at 396. The court's consideration must "allow[] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397. "Because this inquiry is inherently fact specific, the determination whether the force used to effect an arrest was reasonable under the Fourth Amendment should only be taken from the jury in rare cases." *Green v. City of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014) (internal quotation marks and citation omitted).

In ultimately determining whether a Fourth Amendment violation has occurred, the court must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). The analysis involves three steps. *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003). First, the severity of the intrusion on the individual's Fourth Amendment rights is assessed by evaluating the type and amount of force inflicted. *Id.* at 964. Second, the government's interests are evaluated by assessing (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officer's or public's safety; and (3) whether the suspect

was resisting arrest or attempting to escape. *Id.* "Where these interests do not support a need for force, *any* force used is constitutionally unreasonable." *Green*, 751 F.3d at 1049 (internal marks and citation omitted) (emphasis in original). Third, the gravity of the intrusion on the individual is balanced against the government's need for that intrusion. *Miller*, 340 F.3d at 964.

### 1. Severity of Intrusion on Plaintiff's Fourth Amendment Rights

Viewing the undisputed facts in the light most favorable to plaintiff, after plaintiff verbally resisted the officers' orders to leave the marijuana garden, Officer Clay twisted plaintiff's arm while arresting and placing her in a reverse control hold. Clay Body Cam. Two at 1:31–1:33. Plaintiff exclaimed the officer was hurting her, fell to the ground and continued to tell officers she was in pain. *Id.* at 1:33–1:59. During the arrest, Officer Clay's firearm came into contact with plaintiff and banged against plaintiff several times, without pointing directly at her. *Id.* at 1:32–1:38; Hale Body Cam. Two at 10:16–10:26. She later testified she was in "extreme pain." Will Dep. at 108:18. Plaintiff then went to the hospital and received pain medication. *Id.* at 108:17–29. A reasonable jury could find the level of intrusion here was not insignificant. *See, e.g., Brown v. CA DMV*, No. 18-1418, 2019 WL 4138012, at *4 (C.D. Cal. July 10, 2019) ("Twisting a nonresisting individual's arm to inflict pain merely to coerce the individual to sign a traffic ticket could constitute an unreasonable use of force.").

### 2. Government's Interests

Also viewed in the proper light at this stage of the case, the government's interests weigh against the use of force. Here there is no evidence plaintiff posed an immediate threat. While Officer Clay says he was threatened by plaintiff's clenching her fists, she did so only after she was already on the ground. At most, plaintiff verbally resisted officers' orders by refusing to leave the marijuana garden and her actions took "the form of passive noncompliance that creates a minimal disturbance and indicates no threat, immediate or otherwise, to the officer or others." *See Young v. County of Los Angeles*, 655 F.3d 1156, 1165 (9th Cir. 2011). Additionally, there is no evidence plaintiff was actively avoiding arrest or attempting to evade arrest.

As to the severity of crime at issue, plaintiff was arrested under California Penal Code section 148 for obstructing police officers in the lawful exercise of their duties. *See* Cal. Penal

Code § 148. Reasonable jurors could find plaintiff did not know officers were engaged in a lawful exercise of their duties. Officers provided plaintiff with a warrant for the wrong address. Hale Body Cam. Two at 0:46–0:53. While officers had a warrant for the Riverside property, in Red Bluff, California, plaintiff could not have known that fact because the warrant presented to her was the one for the Stagecoach property, which has a different APN and is located in an entirely different city, Corning, California. *Compare* Riverside Warrant, *with* Stagecoach Warrant; *see also* SUF ¶¶ 33; 39; Hale Body Cam. One at 5:19–5:50. When plaintiff reasonably asked to speak to her attorney before execution of the warrant, Officer Clay simply told her a lawyer had no say in the matter, that she was interfering and needed to move. Clay Body Cam. Two at 00:00–00:30. "Disobeying a peace officer's order . . . constitutes only a non-violent misdemeanor offense that will tend to justify force in far fewer circumstances than more serious offenses, such as violent felonies." *Young*, 655 F.3d at 1164–65. Here, a jury could find all three factors weigh against the use of force. *Green*, 751 F.3d at 1049 ("Where [the government's] interests do not support a need for force, '*any* force used is constitutionally unreasonable.'" (emphasis in original)).

### 3. Other Factors Weighing Against the Use of Force

The court also considers other undisputed facts to account for the totality of circumstances in this case. *See Velazquez v. City of Long Beach*, 793 F.3d 1010, 1024 (9th Cir. 2015). Here, Officer Clay did not warn plaintiff he was about to use force. Officer Clay told plaintiff she was under arrest while proceeding to twist her arm. *See* Clay Body Cam. Two at 1:30–1:33. He did not tell her she was under arrest prior to grabbing her arm. *See* Hale Body Cam. Two at 10:15–10:17. There were also no exigent circumstances that made her immediate arrest necessary. For example, there was no threat to the safety of others. "[T]he absence of a warning of the imminent use of force, when giving such a warning is plausible, weighs in favor of finding a constitutional violation." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1092 (9th Cir. 2013). A reasonable jury could conclude Officer Clay could have given plaintiff a warning of his imminent use of force prior to grabbing and twisting her arm.

Alternatively, a jury could determine Officer Clay could have considered less intrusive methods. He could have escorted plaintiff without twisting her arm. Officer Clay could also have ordered her to put her hands behind her back before attempting to place handcuffs on her. "Although officers need not avail themselves of the least intrusive means of responding to an exigent situation, their failure to consider clear, reasonable and less intrusive alternatives to the force employed militates against finding the use of force reasonable." *Rice v. Morehouse*, 989 F.3d 1112, 1124 (9th Cir. 2021) (internal marks and citation omitted).

Viewing the evidence in the light most favorable to plaintiff, the court finds a reasonable jury could find Officer Clay's use of force was greater than reasonable under the circumstances. *See id.* at 1126 ("Because the plaintiff did not make any threats or resist the officer, under our case law, 'the use of non-trivial force *of any kind* was unreasonable.'" (emphasis in original)); *Fontana v. Haskin*, 262 F.3d 871, 880 (9th Cir. 2001) ("[W]here there is no need for force, *any* force used is constitutionally unreasonable." (emphasis in original)). In balancing the intrusion affecting plaintiff's rights with the government's interests at stake, the court finds a reasonable jury could resolve plaintiff's ultimate claim by finding the use of force here unreasonable.

### B.  Qualified Immunity

Defendants argue that even if there was a constitutional violation, Officer Clay is entitled to qualified immunity. "A government official's entitlement to qualified immunity depends on (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *S.R. Nehad v. Browder*, 929 F.3d 1125, 1140 (9th Cir. 2019) (citation and marks omitted); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). "[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As discussed above, the court is unable to conclude as a matter of law that Officer Clay did not violate plaintiff's Fourth Amendment rights. On the first prong, then, the court assumes

plaintiff's rights were violated for purposes of this order.  However, qualified immunity may shield Officer Clay from liability if a reasonable officer would not have known the force used here was unlawful.  *See Ziglar v. Abbasi*, 582 U.S. 120, 152 (2017).  Accordingly, the court turns to whether the law was clearly established.  "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful."  *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal marks and citation omitted).  The clearly established law must be defined with a "high degree of specificity," *id.* at 590 (internal marks and citation omitted), and the court must match the "particular circumstances" and "context" to controlling law, *id.*  "[F]or a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate," and must "squarely govern[] the specific facts at issue."  *Kisela v. Hughes*, 138 S. Ct. 1148, 1152–53 (2018) (per curiam) (internal marks and citation omitted).

The Ninth Circuit has clearly established individuals' "right to be free from the application of non-trivial force for engaging in mere passive resistance" since before 2008.  *Gravelet-Blondin*, 728 F.3d at 1093.  Non-trivial force includes shooting a bean bag projectile, using pepper spray, striking and using pepper spray, and using a taser.  *Rice*, 989 F.3d at 1126–27.  "[E]xerting enough force on [plaintiff's] arm to fracture it, partially dislocate her elbow, and tear the soft tissue [rises] to the level of non-trivial force."  *Close v. City of Vacaville*, 846 F. App'x 513, 516 (9th Cir. 2021) (unpublished).  The Ninth Circuit has also found it is "objectively unreasonable and a violation of the Fourth Amendment . . . to grab [plaintiff] by the arms, throw her to the ground, and twist her arms while handcuffing her."  *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003)."  As plaintiff notes in her opposition, the Ninth Circuit also has held using physical force to extract a plaintiff from a car, shoving him against the door and handcuffing him is unreasonable.  *Liberal v. Estrada*, 632 F.3d 1064, 1069, 1079 (9th Cir. 2011).  In another case, the Ninth Circuit has denied qualified immunity where officers pushed a "harmless motorist against the hood of a car and cause[d] unnecessary pain" by "yanking the arm [plaintiff] claimed was injured," when "they could have patted [plaintiff] down without forcing his arm behind his

1  back." *Winterrowd v. Nelson*, 480 F.3d 1181, 1186 (9th Cir. 2007).  There, officers had pulled
2  the plaintiff over because they suspected his plates were invalid.  *Id.* at 1183.
3        Here, the body camera footage shows Officer Clay did twist plaintiff's arm while arresting
4  her.  Neither he nor his fellow officer forced or threw her to the ground.  Plaintiff argues while
5  "such force may be considered minor, it is well known that such force against an elderly person
6  may result in serious harm." Opp'n at 7.  Plaintiff also argues Officer Clay "battered her with the
7  muzzle of his assault rifle[,] [which] could have discharged at the time, seriously injuring, or
8  killing [her]." *Id.* at 13.  The video footage does not support plaintiff's characterization such that
9  reasonable juror could agree.  Officer Clay did not deliberately touch plaintiff with his rifle, nor
10 did he point or use the rifle to subdue her.  Rather, the rifle, which was hanging in front of Officer
11 Clay, came into contact with plaintiff and banged against her body as he was arresting her, as a
12 result of the physical movements he made to effect the arrest.  *See* Clay Body Cam. Two at 1:32–
13 1:38; Hale Body Cam. Two at 10:16–10:26.
14       Importantly, plaintiff does not argue she was in fact seriously harmed.  Rather, she argues
15 the use of force "may" or "could have" seriously injured her.  *See* Opp'n at 2, 7, 13.  Nor does
16 plaintiff provide evidence of any serious injury.  While at hearing, plaintiff argued her medical
17 records show she was seriously injured and stated she is receiving hip surgery, she did not
18 provide any medical records with her opposition to defendants' motion.  *Arpin v. Santa Clara*
19 *Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (finding plaintiff's claim of injury
20 "unsupported as she d[id] not provide any medical records to support her claim that she suffered
21 injury as a result of being handcuffed"); *cf. Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989)
22 (excessive force found when officers handcuffed the plaintiff in "an abusive manner" that resulted
23 in physical injury evidenced by bruises and medical records).  Plaintiff does not cite to and the
24 court has not located any cases clearly establishing as a matter of law that the amount of force
25 used here could constitute excessive force, such that Officer Clay would have known his conduct
26 was unlawful.  Plaintiff has not met her burden of showing "the contours of [her] right were
27 clearly established." *See Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir.
28 2011); *see also Borden v. Bare*, No. 12-01103, 2022 WL 4586231, at *12 (E.D. Cal. Sept. 29,

2022) ("Defendants' use of force was 'low level' and did not rise to the same level as tasers, bean bag projectiles, or pepper spray."). Accordingly, Officer Clay is shielded from liability by the doctrine of qualified immunity. The court **grants defendant's motion for summary judgment on this claim.**

### C. *Monell* Liability

Defendants also move for summary judgment on plaintiff's *Monell* claim against the County for failure to train and supervise Officer Clay. One theory of *Monell* liability recognized by the Ninth Circuit is failure to train, supervise or discipline. *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019). A municipality's failure to train employees may rise to the level of an official policy under *Monell*, but the omission must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *City of Canton v. Har*ris, 489 U.S. 378, 388 (1989)).

Plaintiff argues there was a failure to train because "the supervisor himself, Chief Clay, was the offender during the underlying incident" and "[h]is acts ratified the unconstitutional policy to execute summary violence upon a suspect during an arrest . . . ." Opp'n at 14–15. Plaintiff relies solely on the circumstances of this case. "While deliberate indifference can be inferred from a single incident when the unconstitutional consequences of failing to train are patently obvious, an inadequate training policy itself cannot be inferred from a single incident." *Hyde v. City of Willcox*, 23 F.4th 863, 874–75 (9th Cir. 2022) (internal marks and citations omitted).

At hearing, plaintiff's counsel argued for the first time there was an absence of training with respect to carrying out civil abatement orders. Once the law changed on legalizing cannabis, she said there should have been training on how officers are to interact with civilians. Here, she noted, officers dealt with the situation as if there was a crime in progress, as evidenced by the assault rifles and firearms officers brought to the scene. Plaintiff argued this is not the first time officers have used excessive force in executing civil abatement warrants. While evidence of other such incidents might help establish an inadequate training policy, plaintiff has not provided the

record to allow such a conclusion here.  Plaintiff has not conducted any discovery on this matter or provided any records related to other similar instances or details to show the County's training was defective.  The undisputed facts of this case alone do not rise to the level of error or omission that is "patently obvious."  *See Harris*, 489 U.S. at 391 ("[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.").  For these reasons, the **court grants summary judgment as to this claim.**

IV.    **CONCLUSION**

For the reasons above, the court **grants defendants' motion for summary judgment.** The Clerk of the Court is **directed to close this case**.

This order resolves ECF No. 30.

IT IS SO ORDERED.

DATED:  April 21, 2023.

CHIEF UNITED STATES DISTRICT JUDGE